IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF OKLAHOMA

MONTE P. GOLDSBOROUGH,            )
                                  )
            Plaintiff,            )
                                  )
                                  ) Case No. CIV-19-114-RAW-KEW
                                  )
COMMISSIONER OF THE SOCIAL        )
SECURITY ADMINISTRATION,          )
                                  )
            Defendant.            )

**REPORT AND RECOMMENDATION**

Plaintiff Monte P. Goldsborough (the "Claimant") requests judicial review of the decision of the Commissioner of the Social Security Administration (the "Commissioner") denying his application for disability benefits under the Social Security Act. Claimant appeals the decision of the Administrative Law Judge ("ALJ") and asserts that the Commissioner erred because the ALJ incorrectly determined that he was not disabled. For the reasons discussed below, it is the recommendation of the undersigned that the Commissioner's decision be REVERSED and the case REMANDED for further proceedings.

**Social Security Law and Standard of Review**

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment. . ." 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if his physical or mental impairments are of

such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. . ." 42 U.S.C. § 423(d)(2)(A). Social Security regulations implement a five-step sequential process to evaluate a disability claim. *See* 20 C.F.R. §§ 404.1520, 416.920.[1]

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g). This Court's review is limited to two inquiries: first, whether the decision was supported by substantial evidence; and, second, whether the correct legal standards were applied. *Hawkins v. Chater*, 113 F.3d 1162, 1164 (10th Cir. 1997) (citation omitted). The term "substantial evidence" has been interpreted by the United States Supreme Court

---

[1] Step one requires the claimant to establish that he is not engaged in substantial gainful activity, as defined by 20 C.F.R. §§ 404.1510, 416.910. Step two requires that the claimant establish that he has a medically severe impairment or combination of impairments that significantly limit his ability to do basic work activities. 20 C.F.R. §§ 404.1521, 416.921. If the claimant is engaged in substantial gainful activity (step one) or if the claimant's impairment is not medically severe (step two), disability benefits are denied. At step three, the claimant's impairment is compared with certain impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1. A claimant suffering from a listed impairment or impairments "medically equivalent" to a listed impairment is determined to be disabled without further inquiry. If not, the evaluation proceeds to step four, where claimant must establish that he does not retain the residual functional capacity ("RFC") to perform his past relevant work. If the claimant's step four burden is met, the burden shifts to the Commissioner to establish at step five that work exists in significant numbers in the national economy which the claimant – taking into account his age, education, work experience, and RFC – can perform. Disability benefits are denied if the Commissioner shows that the impairment which precluded the performance of past relevant work does not preclude alternative work. *See generally, Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988).

2

to require "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971), quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938). The court may not re-weigh the evidence nor substitute its discretion for that of the agency. *Casias v. Secretary of Health & Human Servs.*, 933 F.2d 799, 800 (10th Cir. 1991). Nevertheless, the court must review the record as a whole, and the "substantiality of the evidence must take into account whatever in the record fairly detracts from its weight." *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951); *see also*, *Casias*, 933 F.2d at 800-01.

## Claimant's Background

Claimant was 48 years old at the time of the decision. He has a high school education. He worked in the past as a building maintenance laborer and a material handler. Claimant alleges an inability to work beginning on August 9, 2016, due to limitations resulting from degenerative disc disease, history of left Achilles tendonitis, sleep apnea, obesity, neurocognitive disorder, depression, and anxiety.

## Procedural History

On January 4, 2017, Claimant protectively filed for a period of disability and disability insurance benefits under Title II (42 U.S.C. § 401, *et seq.*) of the Social Security Act. On January 17,

2017, he filed an application for supplemental security income benefits pursuant to Title XVI (42 U.S.C. § 1381, *et seq.*) of the Social Security Act. Claimant's applications were denied initially and upon reconsideration. On June 15, 2018, Administrative Law Judge("ALJ") Lantz McClain conducted a video hearing from Tulsa, Oklahoma, in which Claimant participated from Poteau, Oklahoma. On June 29, 2018, the ALJ entered an unfavorable decision. Claimant requested review by the Appeals Council, and on February 13, 2019, it denied review. As a result, the decision of the ALJ represents the Commissioner's final decision for purposes of further appeal. 20 C.F.R. §§ 404.981, 416.1481.

## Decision of the Administrative Law Judge

The ALJ made his decision at step five of the sequential evaluation. He determined that while Claimant suffered from severe impairments, he did not meet a listing and retained the residual functional capacity ("RFC") to perform sedentary work, with limitations.

## Errors Alleged for Review

Claimant asserts the ALJ committed error by (1) reaching an RFC assessment that does not include all of Claimant's limitations and (2) reaching an RFC assessment unsupported by the medical evidence.

4

**RFC Assessment**

In his decision, the ALJ found Claimant suffered from severe impairments of degenerative disc disease, history of left Achilles tendonitis, sleep apnea, obesity, neurocognitive disorder, depression, and anxiety. (Tr. 17). He determined Claimant could perform sedentary work with additional limitations. Claimant could occasionally lift and/or carry ten pounds and frequently up to ten pounds, stand and/or walk at least two hours in an eight-hour workday, and sit at least six hours in an eight-hour workday. Claimant was limited to simple, repetitive tasks and should not work with the public. (Tr. 21).

After consultation with a vocational expert ("VE"), the ALJ determined Claimant could perform the representative jobs of touch-up screener, document preparer, and polisher, all of which the ALJ found existed in sufficient numbers in the national economy. (Tr. 29). As a result, the ALJ concluded Claimant was not under a disability from August 9, 2016, through the date of the decision. (Tr. 29).

Claimant asserts that the RFC assessment fails to account for all his mental limitations. He argues that mental consultative examiner Theresa Horton, Ph.D., determined he suffered from major neurocognitive disorder. He maintains that the ALJ determined his neurocognitive disorder, depression, and anxiety were severe impairments. Based upon these limitations, Claimant contends that

5

the only limitations included in the RFC that relate to his mental impairments are limitations for simple, repetitive tasks and no work with the public. He argues it is unclear from the RFC whether the limitation to simple and repetitive tasks even relates to his mental abilities, as the terms "simple" and "repetitive" can relate to the task and skill level for assessing physical abilities.

The ALJ discussed Dr. Horton's mental status examination of Claimant in the decision. Claimant reported a lifelong history of depression and anxiety, he was not currently taking medication related to his mental health, but he was attending out-patient counseling. Dr. Horton conducted a mental status examination of Claimant, which included administering Claimant the Montreal Cognitive Assessment, upon which Claimant's score was indicative of a major neurocognitive disorder. Dr. Horton also assessed Claimant with major depressive disorder (recurrent, severe), dysthymia (early onset), and generalized anxiety disorder. Dr. Horton determined Claimant could understand "simple and perhaps somewhat more complex instructions and tasks, though problem solving is slow and will affect level of productivity." She noted Claimant "likely does not adjust well in most settings, particularly those that are fast paced and/or densely populated." (Tr. 25-26, 27, 671).

The ALJ gave "some weight" to the opinions of the state agency psychologists to the extent they determined Claimant was capable

of performing "simple routine tasks." (Tr. 27). However, he specifically referenced Dr. Horton's diagnosis of major neurocognitive disorder and that her report supported additional mental limitations. He assigned the report "great weight." Based on Dr. Horton's examination and report, the ALJ found it was reasonable to conclude Claimant "is limited to simple and routine tasks with no public interaction." (Tr. 27).

There is no error in the ALJ's mental RFC assessment. First, the ALJ explicitly considered Dr. Horton's diagnosis of major neurocognitive disorder when assessing Claimant's mental RFC. (Tr. 27). Second, Claimant's argument that the ALJ's use of the terms "simple" and "repetitive" is somehow unclear or inappropriate also fails. An ALJ can account for mental limitations of functioning by limiting a claimant to certain types of work activity. *See Smith v. Colvin*, 821 F.3d 1264, 1269 (10th Cir. 2016) ("We have held in a published opinion that an administrative law judge can account for moderate limitations by limiting the claimant to particular kinds of work activity."), citing *Vigil v. Colvin*, 805 F.3d 1199, 1204 (10th Cir. 2015) ("[T]he [administrative law judge] accounted for [the claimant's] moderate concentration, persistence, and pace problems in his [assessment of residual functional capacity] by limiting [the claimant] to unskilled work."). Lastly, Claimant does not even assert what additional mental limitations should have been included in the RFC assessment by the ALJ.

7

Claimant also asserts that the RFC assessment does not include the requirement that he use a cane. Claimant testified his treating podiatrist, Kenneth Seiter, Jr., DPM, prescribed him a cane, and he used the cane for balance to help prevent falls and to help him get up and down. (Tr. 44).

The ALJ determined Claimant could perform sedentary work with non-exertional mental limitations. Social Security Ruling 96-9p addresses the impact of an RFC for less than the full range of sedentary work, including consideration of a claimant's use of a hand-held assistive device. The Commissioner argues that even though the cane was prescribed by Dr. Seiter, the ALJ was not required to consider it in the RFC because there is no "medical documentation . . . describing the circumstances for which it is needed" as required by Social Security Ruling 96-9p, 1996 WL 374185, which addresses the consideration of a "medically required" hand-held assistive device. *Id*. at *7.

The record includes several references to Claimant's use of a cane, many of which the ALJ mentioned in his decision. For example, it was noted when Claimant underwent physical therapy in September of 2016 that he was using a single point cane and demonstrated slight left lower extremity antalgic gait with decreased stance time. (Tr. 23, 563). At an appointment with orthopedic surgeon Keith Bolyard, M.D., in October of 2016, the physician noted Claimant "walks with a cane in his left hand,

8

supporting the left foot with ambulation, with a noted limp." (Tr. 24, 605). During physical therapy in December of 2016, it was noted Claimant continued to use a cane to walk and needed assistance from standing to sitting. (Tr. 24, 592). During a follow-up appointment to Dr. Bolyard in December of 2016, he noted he had placed Claimant in and out of a boot based on his symptoms. He observed Claimant's use of a cane and that he walked with an antalgic gait. (Tr. 24, 607). Dr. Bolyard referred Claimant to Dr. Seiter. Dr. Seiter completed a medical source statement on July 5, 2017, wherein he assessed Claimant with several functional limitations, including that Claimant must use a cane or assistive device while engaged in occasional standing/walking. (Tr. 675). The record also includes a prescription from Dr. Seiter for a cane and custom orthotics for Claimant. (Tr. 677).

The ALJ determined Claimant's history of left Achilles Tendonitis was a severe impairment. (Tr. 17). In discussing the weight to assign Dr. Seiter's opinions from the medical source statement, the ALJ referenced that Dr. Seiter had prescribed Claimant a cane and that the record did not contain any treatment notes from Dr. Seiter. (Tr. 26). The ALJ did not specifically reference the finding on Dr. Seiter's medical source statement that Claimant must use a cane or assistive device while engaged in occasional standing/walking, which provides some indication of the circumstances in which the cane was needed. Even though the ALJ

referenced the evidence that Claimant utilized a cane to assist with ambulation and balance and noted the prescription by Dr. Seiter, he made no further mention of Claimant's cane in his discussion of the RFC. He did not address whether Claimant's use of a cane would affect his ability to perform sedentary work under Social Security Ruling 96-9p. The ALJ did not pose any hypothetical questions to the VE which included Claimant's use of a cane. Thus, although it is possible Claimant's use of a cane may not affect his ability to perform sedentary work, this is a determination for the ALJ to address on remand, perhaps with assistance from a VE, not a determination for the Court.

Claimant further argues that in reaching the RFC assessment, the ALJ failed to properly evaluate the opinion of Dr. Seiter. As noted herein, Dr. Seiter completed a medical source statement regarding Claimant's limitations on July 5, 2017, wherein one of his findings was that Claimant must use a cane or assistive device while engaged in occasional standing/walking. Dr. Seiter began treating Claimant on April 5, 2017, and Claimant's diagnoses included bilateral foot pain, plantar fasciitis bilateral, Achilles tendonitis left, left ankle pain, and ankle equinus. He expected Claimant's impairments to last for at least the next twelve months. Dr. Seiter concluded Claimant had several limitations that would affect him 2/3 of the day or more, including standing at one time for 60 minutes, standing in a workday for

less than 60 minutes, sitting for eight hours at one time, sitting in a workday for eight hours, lifting five pounds on an occasional basis, occasionally bending and stooping, never balancing or working around dangerous equipment, constantly operating a motor vehicle, and frequently needing to elevate his legs during an eight-hour workday. Dr. Seiter opined Claimant suffered from severe pain. He also found Claimant would need an option to sit at will, would experience side effects from medication that could impact his work capacity, and would need to recline or lie down in excess of the typical breaks during an eight-hour workday. He estimated Claimant would be absent from work more than four days per month because of his impairments. Dr. Seiter further remarked that Claimant was "limited in standing, climbing, lifting, [and] walking secondary to chronic unresponsive bilateral foot pain." (Tr. 674-75).

Although the ALJ mentions Dr. Seiter's medical source statement in the decision and notes his consideration of the relevant factors in 20 C.F.R. § 404.1527 and § 416.927, the Court finds that the ALJ should reconsider Dr. Seiter's opinions on remand, to the extent certain of the limitations found by Dr. Seiter could be impacted by the ALJ's consideration of Claimant's need to use a cane under Social Security Ruling 96-9p in the RFC assessment.

**Conclusion**

The decision of the Commissioner is not supported by substantial evidence and the correct legal standards were not applied. Therefore, the Magistrate Judge recommends for the above and foregoing reasons, the ruling of the Commissioner of the Social Security Administration should be REVERSED and the case REMANDED for further proceedings. The parties are herewith given fourteen (14) days from the date of the service of this Report and Recommendation to file with the Clerk of the court any objections, with supporting brief. Failure to object to the Report and Recommendation within fourteen (14) days will preclude appellate review of this decision by the District Court based on such findings.

DATED this 24th day of June, 2020.

KIMBERLY E. WEST
UNITED STATES MAGISTRATE JUDGE